IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                         CRIMINAL ACTION NO.   2:16-cr-00163-03
                                                                        2:16-cr-00163-04

DARRELL EUGENE WOODSIDE,
ANNIE JEAN WOODSIDE

        Defendants.

MEMORANDUM OPINION & ORDER

Pending before the court is the defendant Darrell E. Woodside's Motion to Suppress [ECF No. 76]. The government responded [ECF No. 79], and on January 5, 2017, the court heard arguments on the Motion. Additionally, the defendant Annie J. Woodside filed a Motion to Join Defendant Darrell E. Woodside's Motion to Suppress [ECF No. 77] ("Motion to Join"). For the reasons below, the Motion to Suppress is **DENIED** and the Motion to Join is **DENIED as moot**.

I. BACKGROUND

The defendants have been charged by a three-count indictment with conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count I: 21 U.S.C. § 846). Indictment 1 [ECF No. 25]. The defendants' Motion to Suppress is based on

facts that occurred between September 29, 2015, and March 25, 2016, when telephone records were collected as part of a drug trafficking investigation.

On September 29, 2015, Boone County Prosecuting Attorney Keith Randolph ("Randolph") applied to Kanawha County Circuit Court Judge Jennifer Bailey for an order authorizing the installation of a pen register trap and trace ("PR/TT") on Joyce Zornes's[1] phone. Mot. Suppress Ex. A [ECF No. 76-1] ("Sept. 29 App."). Judge Bailey granted the application by order entered September 30, 2015, allowing a collection period of thirty days "from the date of installation or activation" of the PR/TT device. Resp. Ex. 1, at 2 [ECF No. 79-1] ("Sept. 30 Order"). Frontier Communications ("Frontier") installed the device on October 16, 2015, and collected data until it was disengaged on November 12, 2015. Resp. Ex. 2, at 1–13 [ECF No. 79-2] ("30 Day Report"); Resp. 3 [ECF No. 79]; Mot. Suppress Ex. G, at 1–2 [ECF No. 76-2] ("Summaries Call Log"). On November 18, 2015, Judge Bailey granted an extension of the Sept. 30 Order for an additional thirty days. Resp. Ex. 3 [ECF No. 79-3] ("PR/TT Extension Order"). Data collection resumed on November 24, 2015, and extended past the expiration of the PR/TT Extension Order.[2] *See* 30 Day Report 13; Summaries Call Log.

---

[1] Joyce Zornes is another defendant in the same criminal matter, criminal case number 2:16-cr-163-2.

[2] There is a dispute as to the expiration date of the PR/TT Extension. Defendants contend that the PR/TT Extension Order expired sixty days from the date of the original installation, October 16, 2015. *See* Mot. Suppress 2. The government argues that the PR/TT Extension Order expired thirty days from when the date the device was reengaged, November 24, 2015. Resp. 3–4. This distinction is of no consequence to the court's conclusion.

2

On January 11, 2016, Task Force Officer J.R. Brewer ("Brewer") of the West Virginia State Police petitioned Boone County Circuit Court Judge William S. Thompson for a search warrant seeking subscriber records and phone toll information from December 28, 2015 to January 12, 2016 from Frontier as to Joyce Zornes's telephone number. Resp. Ex. 4 [ECF No. 79-4] ("Frontier Search Warrant"). Judge Thompson issued the search warrant, which was served and executed electronically on Frontier's legal compliance office in Everett, Washington. Resp. 4.

On February 11, 2016, Randolph applied for a wiretap order from Judge Bailey and attached an affidavit by Brewer. Resp. Ex. 5 [ECF No. 79-5] ("Intercept Order Application"); Resp. Ex. 6 [ECF No. 76-6] ("Brewer Aff."). The affidavit contained PR/TT information collected past the expiration of the PR/TT Extension Order and information collected by way of the Frontier Search Warrant. Brewer Aff. ¶¶ 34, 40. Judge Bailey granted the application the same day and granted a thirty-day extension on March 4, 2016. Resp. Ex. 7 [ECF No. 79-7] ("Intercept Order"); Resp. Ex. 8 [ECF No. 76-8] ("Intercept Order Extension").

On March 4, 2016, Brewer presented another affidavit to Judge Thompson for a search warrant for phone records pertaining to a different cell phone number involved in the investigation. Mot. Suppress Ex. M. [ECF No. 76-5] ("Verizon Search Warrant"). Judge Thompson issued the warrant to be executed at Verizon's court order compliance division in Branchburg, New Jersey. *Id.*

3

## II. DISCUSSION

The defendant seeks to suppress the following evidence: (1) all PR/TT evidence obtained after the expiration of the PR/TT Extension Order; (2) all evidence collected pursuant to the Frontier Search Warrant and Verizon Search Warrant (collectively, "Search Warrants"); and (3) all evidence collected pursuant to the Intercept Order and Intercept Order Extension (collectively, "Intercept Orders"). Each piece of evidence will be addressed in turn below.

### a. PR/TT Information[3]

The defendant's argument for exclusion of the PR/TT information collected outside the authorized time period fails. It is well established that installation and use of a pen register does not constitute a "search" within the meaning of the Fourth Amendment. *See Smith v. Maryland*, 442 U.S. 735, 745–46 (1979). Despite this, the defendant argues that the information should be suppressed because "[u]nauthorized use of a PR/TT device is a federal crime" under the Pen Register Statute, 18 U.S.C. §§ 3121–3127, and therefore, denying suppression would be "shocking to the conscience, inconsistent with fair play and due process in a constitutional republic, and sufficiently offensive to notions of justice." *See* Mot. Suppress 8–9. The defendant admits, however, that the Pen Register Statute does not provide for exclusion of the

---

[3] It is unclear whether the defendant seeks to exclude this evidence. The defendant argues for suppression of this evidence in his Motion, stating: "[W]hile suppression of the PR/TT evidence regarding Defendant Woodside may not be required by positive law, Defendant Woodside nonetheless requests the suppression of this evidence." Mot. Suppress 9. In oral argument, however, defense counsel admitted, "[W]e're not saying it's excludable for the purposes of trial in this matter." Hr'g Tr. 5:7–8.

information and that "federal law does not *specifically* compel suppression of the illegally gathered PR/TT evidence." *Id.* Thus, the defendant maintains that the court should exclude this evidence, not because his constitutional rights have been violated, but because the Government has failed to comply with an Act of Congress. Courts have consistently refused to accept the defendant's position and have denied suppression of evidence gathered by a PR/TT device where law enforcement officers were in violation of the Pen Register Statute. *See, e.g.*, *United States v. Thompson*, 936 F.2d 1249, 1251–52 (11th Cir. 1991).

Because use of the PR/TT is not a "search" for Fourth Amendment purposes and exclusion is not otherwise prescribed by the Pen Register Statute, evidence gathered from the PR/TT after the expiration of the PR/TT Extension Order will not be suppressed and the Motion is **DENIED** on this point.

### b. Search Warrants

The defendant argues the evidence collected pursuant to the Search Warrants should be excluded because (a) Rule 41 of the Federal Rules of Criminal Procedure applies and (b) the warrants were executed outside the boundaries of those courts' territorial jurisdiction. Mot. Suppress 9–12. Notably, the defendant does not dispute probable cause for the Search Warrants. *See id.* Regardless, the defendant fails to hurdle a determinative obstacle, Fourth Amendment standing.

The defendant recognizes that there is a problem with standing and attempts to dodge it by stating that the defendant "seeks only to suppress those portions of the

5

gathered information that infringe upon *his* privacy: his own communications and information gathered by improper means." *Id.* at 10. In other words, he asks for suppression of any evidence to the extent that he *does* have standing. In stating this, the defendant cannot cogently argue for suppression of any evidence because none exists in which he has a reasonable expectation of privacy. The defendant's purported limitation swallows the standing inquiry and fails to save him from a blatant lack of standing.

Only those whose rights were violated by the search itself—those who have standing—can successfully urge suppression of the product of a Fourth Amendment violation. *Alderman v. United States*, 394 U.S. 165, 171–72 (1969). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.* at 174. A person has standing to contest a search or seizure only when they have a reasonable expectation of privacy in the object of the search warrant. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (articulating the modern reasonable expectation of privacy analysis).

At issue here are the phone records obtained from Frontier and Verizon in compliance with the respective Search Warrants. The records are those for two phone numbers, neither of which belong to the defendant, consisting of call logs showing the originating number, terminating number, call length, and date and time of call. *See* Mot. Suppress Ex. I [ECF No. 76-3]. This information is identical to that which a pen register reveals. An inspection of these records reveals that the defendant's phone

6

number is listed. The question is whether the defendant has a reasonable expectation of privacy in his phone number as listed on the call logs of another person's phone number. The seminal case *Smith v. Maryland* speaks directly to this factual scenario and holds that a person does not have a reasonable expectation of privacy in numbers dialed into a telephone system. *Smith*, 442 U.S. at 744 ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed."). Certainly, *Smith v. Maryland* reveals that even the targets of the Search Warrants would not have a reasonable expectation of privacy in the telephone records. It is clear then that the defendant's expectation of privacy in the records is nil.

The defendant has no reasonable expectation of privacy in the evidence obtained via the Search Warrants. Accordingly, the defendant does not have Fourth Amendment standing to suppress the information gathered pursuant to the Search Warrants. Therefore, the Motion is **DENIED** on this point.

c. **Wiretap Evidence**

For exclusion of the wiretap evidence, the defendant makes a roundabout "fruit of the poisonous tree" argument: because Judge Bailey relied on PR/TT information collected past the expiration of the PR/TT Extension Order in Brewer's supporting affidavits, the Intercept Orders were invalid. Interestingly, the defendant does not

make a coherent argument attacking the facial sufficiency of the affidavits under *Franks v. Delaware*, 438 U.S. 154 (1978), or attacking the validity of the Intercept Orders for lack of probable cause. It is thus difficult to fit the defendant's position into a legal framework.

The defendant correctly argues that intercept orders must comport with federal and state law. Mot. Suppress 13. The federal wiretap statute makes it unlawful to intercept telephone communications by wiretap, except as specifically provided for in the statute. *See* 18 U.S.C. § 2511. The statute specifically provides that state law enforcement officers may use wiretaps to obtain evidence of drug-trafficking activities when authorized to do so by an order issued by an appropriate state court judge, provided that order is issued "in conformity with section 2518 of this chapter and with *the applicable State statute*." *Id.* § 2516(2) (emphasis added). Section 2518 contains myriad requirements for judges to issue valid wiretap orders such as making a specific finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(3)(c). The applicable state wiretap statute, the West Virginia Wiretapping and Electronic Surveillance Act, contains substantially similar provisions in W. Va. Code § 62-1D-11.

The defendant mistakenly relies on § 62-1D-6 of the West Virginia Wiretapping and Electronic Surveillance Act as "the applicable State statute." Under section 62-1D-6, "evidence obtained in violation of the provisions of this article shall not be

8

admissible in any proceeding." W. Va. Code § 62-1D-6. It is illogical to use § 62-1D-6 because this section does not delineate requirements for the issuance of a valid intercept order. Instead, it is a rule of admissibility.[4] Indeed, in analyzing whether intercept orders have comported with "the applicable state statute," the Fourth Circuit has compared intercept orders to the requirements of § 62-1D-11 of the West Virginia Wiretapping and Electronic Surveillance Act—presumably because it is almost identical to § 2518 of its federal counterpart. *See United States v. Smith*, 31 F.3d 1294, 1297 (4th Cir. 1994). Accordingly, the court **FINDS** that "the applicable State statute" is § 62-1D-11. Given the defendant's misplaced reliance on § 62-1D-6 and his admission that the Intercept Orders were facially valid—that is, that they comport with W. Va. Code § 62-1D-11 and 18 U.S.C. § 2518—the defendant's argument stops here and fails.

In oral argument, however, the defendant made a last ditch effort to contest probable cause. On this, defense counsel agreed with the court that "in large part" his argument was that "the pen register/trap and trace evidence[,] which would not if used by itself be excludable because of case law[,] would, if used as partial reason for receiving a wire tap along with what would otherwise be probable cause all by itself, somehow make that probable cause bad[.]" H'rg Tr. 17:2–8. Unfortunately, the defendant's "tainted probable cause" argument does not rest on any authority. In fact,

---

[4] Further, it forces exclusion of evidence "in any proceeding." W. Va. Code § 62-1D-6. The defendant has failed to argue that the application for an intercept order is a "proceeding" and the court need not delve into this question.

case law demonstrates just the opposite, that probable cause may still be intact despite the presence of tainted evidence. *See United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993) (finding that the inclusion of tainted evidence did not invalidate a search warrant because enough untainted evidence supported it). Because the defendant admits that probable cause would otherwise exist even disregarding the PR/TT evidence, the court **FINDS** that the Intercept Orders were supported by probable cause. Even so, the defendant already conceded facial validity and there is no evidence to suggest that law enforcement did not rely in good faith on the Intercept Orders. *See United States v. Brewer*, 204 F. App'x 205, 208 (4th Cir. 2006) (holding the good faith exception to the Fourth Amendment exclusionary rule, as articulated in *United States v. Leon*, 468 U.S. 897 (1984), applies in the Title III context); *see, e.g.*, *United States v. Miller*, 50 F. Supp. 3d 717, 729 (D. Md. 2014) (finding "law enforcement officers were entitled to rely on facially valid wiretap orders").

Accordingly, the Motion is **DENIED** with respect to the evidence obtained via the Intercept Orders.

### III. CONCLUSION

For these reasons, the court **ORDERS** that the defendant Darrell E. Woodside's Motion to Suppress [ECF No. 76] is **DENIED** and the defendant Annie J. Woodside's Motion to Join [ECF No. 77] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

        ENTER:    January 23, 2017

        _____
        JOSEPH R. GOODWIN
        UNITED STATES DISTRICT JUDGE